## Edward Granger v. Domethilde Bissonnette et al.

1. PROMISSORY NOTES—*Cancellation of—Substitution of New Notes for Old Ones Secured by Mortgage.*—Where, by mutual agreement of the parties, new notes are given and accepted in lieu of and for the purpose of correcting a mistake in notes previously given and secured by mortgage, the maker is entitled to have the old notes canceled, but the mortgage securing them will stand as security for the new notes.

**Bill,** for the cancellation of promissory notes. Appeal from the Circuit Court of Kankakee County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the May term, 1896. Reversed and remanded with directions. Opinion filed December 9, 1896.

WILLIAM POTTER and GRANGER & DAVIDSON, attorneys for appellant.

H. K. WHEELER, attorney for appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a bill in equity, by appellant against appellees, for the purpose of having an old note canceled, and a new one held to be in force in place of it, and a mortgage given by appellant to secure the old note held to be in force to secure the new note.

Charles Granger was the father of appellant, as also father of appellees in this case. The bill alleges that the consideration of the lands in question was $4,400; that a deed was duly made about October 16, 1882, for the said lands, and that part of the consideration for the sale was in the shape of notes signed by appellant, and at the request of said Charles Granger, made payable to the appellees respectively; that the notes remained in the possession of Charles Granger, and in 1891, at the request of said Charles Granger, while the latter had the notes in possession, they were exchanged for notes of the same date, payable to the same parties, but in larger amounts, the said Charles Granger claiming that a mistake had been made in the price of the land at the time the deed and notes were made in 1882; that upon the making of the new notes in larger amounts, the old notes were given up by Charles Granger to the appellant, but that a mortgage that had been given to secure the original notes was not released, the fact that its having been given not being remembered by appellant; that after the death of Charles Granger and after the new notes had come into possession of appellees, appellant discovered that such a mortgage had been given, and that thereupon he went to each of the said appellees and requested a release of said mortgage, offering at the same time to either give a new mortgage securing the new notes or pay the notes themselves, all of which the appellees refused to do. Further, the bill alleges that the said mortgage is a cloud upon the

title of appellant, rendering the title to his lands unmarketable and depreciating the value thereof. The bill then " prays that the court may order the appellees to release said mortgage and in default of such release a special commissioner be appointed to make said release, or if the court shall deem it more equitable that the appellant give a new mortgage to secure the new notes, then that an order be made to that effect upon tendering to the appellees a mortgage upon the lands in question, and that the old notes be declared canceled and of no value, and that an order be made for the release of the old mortgage as prayed for, and for such other and further relief as to the court may seem fit." Which prayer, by leave of the court, was amended by adding the following: Or that the mortgage given to secure the old notes be declared to be a mortgage to secure the new notes. And that upon the payment of said new notes the payee of such new notes respectively, when so paid, shall release said mortgage so far as such payee is concerned."

The defendants answered the bill, claiming that Charles Granger executed the notes as claimed for the respondents, and that the title of the notes became vested in the respondents, and deny that Charles Granger had the power to divest such title without the consent of the respondents. They admit that while Charles Granger held possession of the notes he did so for them; deny that Charles Granger delivered up the notes and had them canceled, or that they ever authorized it; deny that the new notes were given in consideration of the surrender of the old ones. They also aver that the new notes were given to appellees by Charles Granger to make them equal with their brothers in the distribution of the estate and to balance up rents the appellant received while the notes were held by Charles Granger, and that the old notes and new ones were only sufficient to make the respondents equal in the division of their father's estate and that that was what they were given for.

On the trial of the said cause the court below dismissed the bill for want of equity and decreed the costs against the appellant. From that decree this appeal is taken. The

first notes were $942.85 each to the respondents, and the new notes were $1,000 each.

We have examined the evidence carefully and have arrived at the conclusion that the new notes were given and intended to be by Charles Granger, in lieu of the old notes; that his only object was to increase the gift to his daughters to $1,000 each, and that that was agreed and so understood between him and the appellant. This fact sufficiently appears, as we think, by the evidence of Elizabeth Granger (formerly Beaubien), Narcisse Granger, Edward Granger, Sarah Granger and Hermine Granger.

We think the testimony of these witnesses was corroborated to some extent by the testimony of the appellees.

This being the case it would be inequitable and unjust to the appellant to allow the appellees to receive and retain both the old and the new notes.

If they accept the new notes, equity would require that they cancel the old ones; either that or that they surrender up the new notes and claim the old ones.

We think, under the evidence, that the court below should have granted the relief sought by appellant's bill; that it should have decreed the cancellation of the old notes, and that the mortgage stand as security for the payment of the new ones, the latter having been given to correct error in the old ones. We think that the deceased had a right in his lifetime to make the change in the notes, but even if he had not, and what he did was intended to substitute the new notes for the old ones by agreement with appellant, the appellees would not be allowed to claim the payment of both series of notes.

The decree of the court below is reversed and the cause remanded, with directions to that court to grant the relief prayed for in the bill as indicated in this opinion, with the costs of this court and those of the court below against appellees. Reversed and remanded.